# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

U.S. Bank National Association, as
Indenture Trustee,

Plaintiff and<br>Counter Defendant,

Civ. No. 11-1445 (RHK/JJG)<br>

**MEMORANDUM OPINION
AND ORDER**

v.

Education Loans Incorporated and
Student Loan Finance Corporation,

Defendants and<br>Counter Claimants.

James E. Spiotto, Chapman & Cutler LLP, Chicago, Illinois, and James F. Killian,
Maslon Edelman Borman & Brand, LLP, Minneapolis, Minnesota, for Plaintiff.

Douglas L. Elsass, Terrence M. Fruth, Fruth Jamison & Elsass PA, Minneapolis,
Minnesota, for Defendants.

## OVERVIEW

Plaintiff U.S. Bank National Association, as Indenture Trustee ("Plaintiff") serves

as trustee to a number of trusts containing student loans (the "Trusts"). Pursuant to

Indenture Agreements (the "Indentures"), Defendant Education Loans Incorporated

("EdLinc") issued notes to finance student loans that were deposited into the Trusts.

Defendant Student Loan Finance Corporation ("SLFC"), EdLinc's parent company, acts

as the servicer and administrator of those loans pursuant to a Servicing Agreement. The

instant action follows a previous *qui tam* lawsuit in another district (the "Oberg

Litigation"), in which EdLinc and SLFC were alleged to have improperly obtained

subsidies from the federal government for student loans held in the Trusts.  EdLinc and

SLFC settled the Oberg Litigation and now seek payment from the Trusts for the legal

fees incurred in that action, as well as for the amount they paid to settle the claims

(collectively, the "Oberg fees and expenses").

Plaintiff has refused to release Trust funds to pay the Oberg fees and expenses.  In

this action, it seeks declarations that such payments are not authorized by the terms of the

Indentures and that any funds previously drawn on the Trusts to pay the Oberg fees and

expenses must be returned.  It also alleges that EdLinc and SLFC have breached various

provisions of the Indentures and Servicing Agreement.  In response, Defendants

counterclaim, seeking a declaration that the Indentures do authorize payment of the

Oberg fees and expenses and asserting claims for unjust enrichment, quantum meruit, and

indemnification and contribution based on the Oberg fees and expenses they have paid.

They also assert seven[1] affirmative defenses.

Presently before the Court are: (1) Plaintiff's Motion to Dismiss Defendants'

Counterclaims, and (2) Plaintiff's Motion to Strike Defendants' Affirmative Defenses.

For the reasons set forth below, the Court will deny the Motion to Dismiss and grant in

part and deny in part the Motion to Strike.

---

[1] The Answer originally asserted nine affirmative defenses; however, Defendants informed the
Court at the October 28 hearing on these Motions that they have agreed to drop their fourth and
ninth defenses—assumption of risk and a reservation of rights.  Thus, the Court will only analyze
whether to strike the remaining seven.  It will continue to refer to the defenses by their original
numbers, however—i.e., "the fifth affirmative defense"—as the parties have done.

# BACKGROUND[2]

## I.    The parties and their agreements

SLFC and EdLinc purchase student loans from other lenders, originate student loans, and administer those loans.  They deal with loans that are guaranteed and subsidized by the federal government under the Federal Family Education Loan Program ("FFELP").  Plaintiff holds the loans purchased or originated by Defendants in Trusts and serves as Indenture Trustee.

EdLinc entered into an Indenture of Trust with Plaintiff in 1998 and various Supplemental Indentures of Trust thereafter (collectively, the "Indentures").  Pursuant to the Indentures, EdLinc would finance the acquisition and origination of student loans by issuing notes.  The financed students loans, along with all of the rights in those loans and all payments related to them (including principal, interest, and subsidy payments) would then be conveyed to Plaintiff, which would hold them in Trust for the benefit of EdLinc to secure its obligations under the notes.

The Indentures set forth various obligations between Plaintiff and EdLinc, including an obligation to pay Administrative Expenses (which Defendants argue include the Oberg fees and expenses) out of various funds held by Plaintiff.  Administrative Expenses are defined as follows:

> [EdLinc's] actual expenses, excluding Note Fees but including Servicing Fees and any other expenses of [EdLinc] incurred in connection with the servicing of Financed Student Loans, of carrying out and administering its

---

[2] The parties have failed to provide the Court with detailed recitations of the facts, instead primarily incorporating by reference the factual allegations set forth in their lengthy pleadings. Accordingly, the Court provides only a general overview of the facts as outlined in the pleadings.

powers, duties, and functions under . . . its articles of incorporation, its bylaws, the Student Loan Purchase Agreements, any Servicing Agreement, the Contract of Insurance, the Guarantee Agreements, any Certificate of Insurance, the Program, the Higher Education Act or any requirement of the laws of the United States or the Statutes with respect to the Program, as such powers, duties, and functions relate to Financed Student Loans . . . and this Indenture.  Such expenses may include, without limiting the generality of the foregoing, salaries, supplies, utilities, mailing, labor, materials, office rent, maintenance, furnishings, equipment, machinery, telephones, travel expenses, insurance premiums, and legal, accounting, management, consulting and banking services and expenses, and payments for pension, retirement, health and hospitalization and life and disability insurance benefits; but shall not include (i) debt service on the Notes or any other bonds, notes or other evidences of indebtedness of [EdLinc], (ii) amounts payable under any Other Obligation or (iii) Costs of Issuance or the fees, costs, or expenses of [EdLinc] with respect to any other bonds, notes or indebtedness of [EdLinc].

(Compl. Ex. 1, § 1.1, at p. 1-3.)  Section 5.15 of the Indentures provides that Administrative Expenses should not exceed what is reasonable and necessary in any given year.  Section 4.3 further provides that such payments cannot exceed the amount budgeted unless EdLinc certifies to Plaintiff in writing that the increased expenses are reasonable, will not materially affect EdLinc's ability to perform its obligations, and can be paid out of the administrative fund pursuant to the Indentures' terms.

The Indentures also allowed EdLinc to enter into a servicing agreement, which it would then be obligated to enforce.  EdLinc did so, entering a Servicing Agreement and Servicing Administration Agreement, as amended (the "Servicing Agreement"), with its parent company, SLFC.  SLFC, EdLinc, and Plaintiff all were parties to the Servicing Agreement, pursuant to which SLFC acts as the administrator and servicer of the loans held by Plaintiff.  The Servicing Agreement obligates SLFC to provide administrative services on behalf of EdLinc regarding some of its responsibilities under the Indentures,

4

as well as services related to the origination, acquisition, servicing, and collection of the loans in the Trusts.  One of SLFC's responsibilities under the Servicing Agreement is to collect student-loan subsidies known as Special Allowance Payments ("SAPs") with respect to the loans and cause those payments to be forwarded directly to Plaintiff from the Secretary of Education.

## II.   The Oberg Litigation and settlement

The Oberg Litigation was a *qui tam* lawsuit under the False Claims Act filed in 2007, alleging that the Department of Education had paid SAPs that were higher than permitted by law as a result of "false" claims by EdLinc and SLFC, among others. Plaintiff was not named as a party in the Oberg Litigation.  With respect to his claims against EdLinc and SLFC, Oberg alleged that more than $15 million in excess SAPs had been paid for loans held by Plaintiff under the Indentures.  He sought treble damages totaling over $45 million, as allowed by the False Claims Act.

Ultimately, EdLinc and SLFC entered into a settlement agreement on August 18, 2010, agreeing to pay $3 million to resolve the Oberg Litigation.  They also incurred legal fees and expenses totaling approximately $4 million in defending the case. According to Defendants, the settlement agreement provided that if the settlement was not paid, the Department of Education could offset payment from subsequent SAPs made for loans held in the Trusts to which overpayments had been made.

The boards of both SLFC and EdLinc passed resolutions approving the settlement, which provided that payment would be made out of the Indenture Trusts.  Plaintiff was not part of the settlement process, however, and Defendants did not obtain its consent to

the agreement or to payment out of the Trusts.  A letter from Defendants' counsel in the

Oberg Litigation to the Trusts' auditor provided that EdLinc would pay the settlement

and all of the litigation costs.  This letter mentioned nothing about Defendants' intent to

seek reimbursement from Plaintiff or the Trusts for the Oberg fees and expenses.

## III.   Payment of the Oberg fees and expenses

While the Oberg litigation was still ongoing, EdLinc and SLFC thrice directed

Plaintiff to transfer money from various funds to cover administrative expenses.  The first

transfer, in October 2009, was in the amount of $100,000, and EdLinc informed Plaintiff

that the money was to pay certain legal fees incurred in the Oberg litigation.  However, it

provided no information about the nature or scope of the Oberg litigation.  The second

and third directions were on February 5 and February 11, 2010, directing Plaintiff to

transfer payments of $600,000 and $800,000, respectively.  Defendants did not specify

the intended use of these funds other than saying they were for Administrative Expenses.

Plaintiff complied and transferred $1.4 million from the Trusts.

On August 11, 2010, shortly before the Oberg settlement, SLFC sent letters to

Plaintiff seeking to revise the directions it had previously given regarding the February

fund transfers.  With these letters was an acknowledgement form Plaintiff was asked to

sign, which would have acknowledged that the February transfers were for expenses

related to the Oberg Litigation.  Later, on August 27, Defendants requested that Plaintiff

confirm to financial auditors that they (Defendants) would not have to reimburse the

Trust for the $1.4 million transferred in February.  Plaintiff did not provide this

confirmation.  It also refused to comply with Defendants' subsequent directions to

6

transfer additional funds for Oberg fees and expenses, including directions in January 2011 to transfer money to cover the $3 million settlement amount.

## IV.    The instant action

After refusing to pay the Oberg fees and expenses, Plaintiff commenced this action in June 2011, seeking (among other things) declarations that Defendants must return the $1.4 million transferred from the Trusts for payment of Oberg fees and expenses and that Plaintiff is not obligated to release Trust funds for payment of the remaining Oberg fees and expenses pursuant to the Indentures.  It also asserts a claim for breach of the Indentures and Servicing Agreement by Defendants.  Defendants responded by asserting a Counterclaim, seeking a declaration that Plaintiff *is* obligated to pay the Oberg fees and expenses pursuant to the terms of the Indentures, as well other claims. Defendants have also asserted nine affirmative defenses to Plaintiff's claims.

Before the Court presently are Plaintiff's Motion to Dismiss Defendants' Counterclaim and Plaintiff's Motion to Strike Defendants' Affirmative Defenses.  The Motions have been fully briefed, the Court heard oral arguments on October 28, 2011, and both matters are now ripe for decision.

## DISCUSSION

## I.    Motion to Dismiss

Plaintiff moves to dismiss Defendants' Counterclaim.  The Supreme Court set forth the standard for evaluating a Rule 12(b)(6) motion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  To avoid dismissal, a complaint (or a counterclaim) must include "enough facts to state a claim to relief that is plausible on its face."  Id. at

547.  A "formulaic recitation of the elements of a cause of action" will not suffice.  Id. at

555; accord Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Rather, the party must set

forth sufficient facts to "nudge[] the[] claim[] across the line from conceivable to

plausible."  Twombly, 550 U.S. at 570.  Stated differently, a party must "assert facts that

affirmatively and plausibly suggest that [it] has the right [it] claims . . . , rather than facts

that are merely consistent with such a right."  Stalley v. Catholic Health Initiatives, 509

F.3d 517, 521 (8th Cir. 2007) (citing Twombly, 550 U.S. at 554–57).

When reviewing a motion to dismiss, the Court "must accept [the complaining

party's] specific factual allegations as true but [need] not . . . accept [its] legal

conclusions."  Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing

Twombly, 550 U.S. at 556).  A claim should not be dismissed simply because the Court

is doubtful that the party will be able to prove all of the necessary factual allegations.  Id.

at 556.  Accordingly, a well-pleaded claim will survive a motion to dismiss even if it

appears that recovery is remote and unlikely.  Id.

Plaintiff first argues that the Counterclaim should be dismissed in its entirety

because it improperly seeks relief from the incorrect party—U.S. Bank in its individual

capacity, rather than in its capacity as trustee.  A review of the Counterclaim, however,

reveals that (i) the caption identifies Plaintiff as "U.S. Bank National Association, *as

Indenture Trustee*," (ii) it defines Plaintiff as "Trustee" in the first paragraph, and (iii) it

subsequently uses the defined term "Trustee" throughout rather than referring to Plaintiff

by name.  (See Doc. No. 18 (emphasis added).)  The *only* reference in the Counterclaim

to "U.S. Bank National Association" without the word "Trustee" is in the "wherefore"

8

clause on page 32, which provides: "Wherefore, EdLinc and SLFC request the following order and judgment of this Court in their favor and against U.S. Bank National Association." (<u>Id.</u> at 32.)  It is clear from the face of the Counterclaim that Defendants intended to assert their Counterclaim against U.S. Bank in its capacity as Trustee, and their response to the Motion confirms as much.[3]  (<u>See</u> Mem. in Opp'n 14 n.6 (seeking leave to amend to add the words "as Trustee" if the Court deems it necessary).)  The Court is not swayed by Plaintiff's hyper-technical argument, and it determines that the Counterclaim is properly asserted against U.S. Bank in its capacity as Trustee.

Plaintiff also contends that Counts II and III of the Counterclaim, asserting claims for unjust enrichment and quantum meruit, respectively, should be dismissed.  It argues that such equitable claims are unavailable to Defendants because the rights of the parties are entirely fixed by express contracts—the Indentures and Servicing Agreements. Defendants respond that they have merely pleaded these equitable, quasi-contract claims in the alternative, as the Rules of Civil Procedure permit.

Courts commonly allow parties to plead both contract and quasi-contract claims and decline to dismiss the latter unless and until the contract is deemed to be valid and to govern the dispute at issue.  Rule 8 expressly allows a party to plead alternative claims, regardless whether or not they are consistent with one another.  <u>See</u> Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or

---

[3] At the hearing on this Motion, counsel for Defendants attempted to explain that they realized after filing their Counterclaim that it was important to distinguish and assert an alternative claim against U.S. Bank in its individual capacity as well as in its capacity as Indenture Trustee. However, when pressed, counsel acknowledged that the Counterclaim was "clearly" asserted against Plaintiff U.S. Bank as Indenture Trustee.  (<u>See</u> Tr. at 32.)

hypothetically."); id. 8(d)(3) ("A party may state as many separate claims or defenses as it has, *regardless of consistency*.") (emphasis added).  Although neither party currently argues that the Indentures and Servicing Agreement do not fully govern the instant dispute, it is not yet clear on the present record whether those contracts fully fix their rights.  Defendants have asserted these claims "only to the extent that there is a determination that the Indentures do not control the particular issue in dispute." (Mem. in Opp'n 12 n.5.)  Such alternative pleading is permissible, and the Court declines to dismiss Counts II and III of the Counterclaim at this juncture.

## II.    Motion to Strike

Plaintiff also moves to strike all of Defendants' affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f), which provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   The Eighth Circuit has long held that motions to strike are "viewed with disfavor and are infrequently granted."  Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977)). "A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear."  Lunsford, 570 F.2d at 229 (citation omitted).  Striking all or part of a party's pleading is considered "an extreme measure." Stanbury, 221 F.3d at 1063.

Plaintiff argues, however, that the pleading standard set forth in Twombly and Iqbal should apply to affirmative defenses, which would subject Defendants' affirmative defenses to a much more rigorous analysis than the standard set forth above.  The Eighth

Circuit has not opined on whether <u>Twombly</u> and <u>Iqbal</u> apply to affirmative defenses, and courts within this district have reached inconsistent conclusions. <u>Compare</u> <u>Schlief v. Nu-Source, Inc.</u>, Civ. No. 10-4477, 2011 WL 1560672, at *9 (D. Minn. Apr. 25, 2011) (Frank, J.) (concluding <u>Twombly</u> does not apply to affirmative defenses), <u>Wells Fargo & Co. v. United States</u>, 750 F. Supp. 2d 1049, 1051 (D. Minn. 2010) (Schiltz, J.) (same), <u>and</u> <u>Merchant & Gould, P.C. v. Premiere Global Servs., Inc. v. Advanstar Commc'ns Inc.</u>, Civ. No. 09-3144, slip op. at 8 (D. Minn. Dec. 30, 2009) (Mayeron, M.J.) (same), <u>with</u> <u>Ahle v. Veracity Res. Co.</u>, 738 F. Supp. 2d 896, 924-25 (D. Minn. 2010) (Montgomery, J.) (extending <u>Twombly</u> and <u>Iqbal</u> to affirmative defenses), <u>and</u> <u>EEOC v. Hibbing Taconite Co.</u>, 266 F.R.D. 260, 268 (D. Minn. 2009) (Erickson, M.J.) (imposing the same pleading requirements to affirmative defenses as to claims).

The undersigned agrees with the cases holding that <u>Twombly</u> and <u>Iqbal</u> do *not* apply to affirmative defenses. The Eighth Circuit has held that an affirmative defense "need not be articulated with any rigorous degree of specificity and is sufficiently raised for purposes of Rule 8 by its bare assertion." <u>Zotos v. Lindbergh Sch. Dist.</u>, 121 F.3d 356, 361 (8th Cir. 1997) (citations and internal quotations omitted). Although <u>Zotos</u> predated <u>Twombly</u> and <u>Iqbal</u>, neither those cases nor any subsequent Eighth Circuit decisions have extended heightened pleading requirements to affirmative defenses, and the Court thus remains bound by <u>Zotos</u>. <u>Accord</u> <u>Hahn v. Best Recovery Servs., LLC</u>, No. 10-12370, 2010 WL 4483375, at *2 (E.D. Mich. Nov. 1, 2010) ("[W]ithout Sixth Circuit guidance to the contrary, this Court is not convinced that <u>Twombly</u> or <u>Iqbal</u> set forth the pleading requirements for affirmative defenses."). Furthermore, this conclusion is

11

supported by the text of Rule 8. As another judge in this district recently noted:

> [N]othing in the text of the Federal Rules of Civil Procedure or in the Appendix of Forms even hints that a defendant must plead sufficient facts to establish the 'plausibility' of an affirmative defense. Iqbal and Twombly are grounded on the requirement in Rule 8(a)(2) that a 'claim for relief' contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' An affirmative defense is not a claim for relief, and neither Rule 8(a)(2) nor any other rule requires a defendant to plead facts 'showing' that the plaintiff is *not* entitled to relief.

Wells Fargo, 750 F. Supp. 2d at 1051 (emphasis in original).[4]  Rule 8(b) requires

defenses to be stated in "short and plain terms," while Rule 8(c) provides that a defendant

must "affirmatively state" any affirmative defense in order to preserve it.  Defendants

have stated each of their affirmative defenses, and the Court determines the defenses are

sufficiently pleaded for purposes of Rule 8.

Plaintiff further contends, however, that each of the defenses is insufficient for

various other reasons.  The Court addresses these arguments in turn.[5]

*Failure to State a Claim.*  Plaintiff argues that Defendants' first affirmative

defense, which asserts that the Complaint fails to state a claim, is immaterial and not a

---

[4] Many of the cases declining to extend Twombly and Iqbal to affirmative defenses also note the practical differences between plaintiffs (who have months or years to investigate claims prior to pleading them) and defendants (who must answer within 21 days).  If this were the basis for concluding that a heightened pleading standard should not apply to affirmative defenses, however, then the standard should not apply to counterclaims for the same reason—but it appears clear that Twombly and Iqbal do apply to counterclaims, and neither party suggests otherwise.  Accordingly, this Court relies upon the text of Rule 8 and the fundamental distinction between claims and defenses rather than such practical considerations.

[5] While the Court has duly analyzed each of the affirmative defenses as this Motion requires, the entire Motion seems to be, to borrow a phrase, "much ado about nothing."  The parties have undoubtedly expended many hours preparing and defending the Motion, advancing countless and sometimes highly technical reasons why each affirmative defense should be stricken.  Yet regardless of the outcome and despite the Court's resources demanded by this Motion, it does little to advance or streamline the action.

valid affirmative defense.  Previous decisions on this issue are inconsistent.  Some courts

have held that failure to state a claim is not a true affirmative defense because it merely

asserts there is a defect in the plaintiff's case, while others conclude it is an acceptable

affirmative defense.  Compare Lemery v. Duroso, No. 09-167, 2009 WL 1684692, at *3

(E.D. Mo. June 16, 2009) (striking defense as legally insufficient), and Boldstar

Technical, LLC v. Home Depot, Inc., 517 F. Supp. 2d 1283, 1291 (S.D. Fla. 2007)

("Failure to state a claim is a defect in the plaintiff's claim; it is not an additional set of

facts that bars recovery . . . [t]herefore, it is not properly asserted as an affirmative

defense."), with  SEC v. Toomey, 866 F. Supp. 719, 723 (S.D.N.Y. 1992) ("[T]he failure-

to-state-a-claim defense is a perfectly appropriate affirmative defense.").  Still other

courts have determined that the proper remedy is not to strike the defense but to treat it as

a denial rather than as an affirmative defense.  E.g., Bluewater Trading LLC v. Willmar

USA, Inc., No. 07-61284, 2008 WL 4179861, at *2 (S.D. Fla. Sept. 9, 2008).

In this Court's view, failure to state a claim is not technically an affirmative

defense; however, striking the defense at this juncture would serve no real purpose.  The

Federal Rules of Civil Procedure provide that failure to state a claim may be raised in a

responsive pleading (such as an Answer), by a Motion for Judgment on the Pleadings, or

as late as at trial.  See Fed. R. Civ. P. 12(h)(2).  Here, Defendants have done what Rule

12(h) contemplates by raising the defense in their Answer, although they have mislabeled

it an affirmative defense.[6]  The Motion is denied as to this defense, but the Counterclaim

---

[6] Defendants argue that failure to state a claim is a "model affirmative defense" in Form 30 of the
Federal Rules of Civil Procedure.  However, while Form 30 (a model of an Answer) includes an

should be amended to remove it from under the heading "Affirmative Defenses."

     *Estoppel*.  Plaintiff argues that the second affirmative defense, estoppel, must be stricken because it is an equitable remedy not available where an unambiguous contract exists and covers the dispute at issue.  It further argues that the defense cannot survive because there must be "clear and convincing evidence" of the factors required to prove estoppel.  (<u>See</u> Mem. in Supp. 8.)  The Court cannot agree with either contention.  First, Rule 8(d) expressly allows a party to plead inconsistent defenses in the alternative just as it may plead alternative claims.  <u>See</u> Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims *or defenses* as it has, *regardless of consistency.*") (emphases added). Thus, the fact there is a contract does not necessarily preclude the assertion of equitable claims or defenses at this juncture, where it is not yet clear whether the contract wholly governs the dispute at issue.  Second, and as set forth above, an affirmative defense is sufficiently pleaded simply by its bare assertion; it certainly does not require "clear and convincing" evidence in order to survive a Motion to Strike.  The Motion will be denied as to this defense.

     *Waiver*.  As with estoppel, Plaintiff argues that Defendants' affirmative defense of waiver should be stricken because it is precluded by the existence of the Indentures.  And as discussed above, alternative and inconsistent affirmative defenses are permitted. Hence, the Court will deny the Motion as to this defense as well.

     *Ratification*.  Plaintiff argues that the fifth affirmative defense, ratification, should

---

assertion that "[t]he Complaint fails to state a claim upon which relief can be granted," it does *not* label it an affirmative defense, <u>see</u> Fed. R. Civ. P., App'x of Forms, Form 30, a fact Defendants conceded at oral argument.

be stricken on the same basis as the estoppel and waiver defenses, because the Indentures govern the dispute.  For the same reasons the Court declined to strike the estoppel and waiver defenses, it will deny the Motion as to the ratification defense.

*Failure to Join Indispensable Parties*.  Defendants' sixth affirmative defense asserts that Plaintiff has failed to join indispensable or necessary parties, namely the United States and Oberg.  As with the failure-to-state-a-claim defense, Plaintiff argues this is not a valid affirmative defense.  While Plaintiff is again correct that failure to join an indispensable party is not technically an affirmative defense, Rule 12 allows it to be asserted in an answer just like failure to state a claim.  See Fed. R. Civ. P. 12(h)(2).

Yet Plaintiff also argues that this defense has no legal basis because the dispute is solely between itself and Defendants.  As Plaintiff points out, Defendants assert a Counterclaim for declaratory judgment regarding the interpretation of the Indentures that is exactly the inverse of the declaration sought in the Complaint, yet they have not sought to join any other parties.  At this juncture, it appears that complete relief can be accorded among the existing parties without additional parties and without resulting in inconsistent obligations.  See Fed. R. Civ. P. 19(a).  Thus, there is no ostensible basis for the defense of failure to join indispensable parties, and the Court will grant the Motion to strike it.

*Failure to Exhaust State Remedies*.  Plaintiff next attacks the seventh affirmative defense—that it failed to exhaust its available state-law remedies—on the grounds that it is "so vague as to be impertinent" because Defendants failed to identify particular state-law remedies.  Yet failing to cite a specific statute supporting an affirmative defense in one's answer does not doom the defense.  See, e.g., Holway v. Negro Leagues Baseball

Museum, 263 Fed. App'x 538, 538 (8th Cir. 2008) (concluding a defendant did not waive statute-of-limitations defense by failing to cite a specific statute in its answer).  Plaintiff argues this defense will require it to "pour through the entire South Dakota Codified Laws" to determine what remedial provisions could have been applicable, unnecessarily complicating discovery (see Mem. in Supp. 13); however, an interrogatory inquiring into the basis for this defense could efficiently narrow the issue.  "Defenses should not be stricken where the law . . . determining their application [is] unclear."  Merchant & Gould, slip op. at 7 (quoting Williamson v. Unifund CCR Partners, No. 08-218, 2009 WL 187702, at *2 (D. Neb. Jan. 23, 2009) (citations omitted)).  Accordingly, the Court will deny the Motion to Strike as to this defense.[7]

    *Failure to Mitigate*.  Plaintiff contends that the eighth affirmative defense, which alleges failure to mitigate damages, is inapplicable here because no torts are alleged and none of the damages sought are subject to mitigation.  Specifically, it asserts that it "fails to comprehend how the return of unauthorized payments—payments which were reimbursements of amounts already paid by Defendants—could be mitigated."  (Mem. in Supp. 12.)  Defendants respond that mitigation *can* apply to contract damages, and they point to the fact that Plaintiff initially transferred funds to pay some Oberg fees and expenses even though it arguably knew what those payments were for, thus allowing damages to accrue and increase.  In the Court's view, and based upon the sparse record at

---

[7] Likewise, the Court finds it unnecessary to require Defendants to provide a more definite statement under Rule 12(e), as Plaintiff urges.

this stage, factual or legal issues involving failure to mitigate damages may exist.  Hence, striking the defense is inappropriate at this juncture.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1)  Plaintiff's Motion to Dismiss Defendants' Counterclaim (Doc. No. 25) is **DENIED**;

2)  Plaintiff's Motion to Strike Defendants' Affirmative Defenses (Doc. No. 22) is **GRANTED IN PART** and **DENIED IN PART** as follows:  (a) the Motion is **DENIED** as to the First, Second, Third, Fifth, Seventh, and Eighth Affirmative Defenses; and (b) the Motion is **GRANTED** as to the Sixth Affirmative Defense in Defendants' Answer (Doc. No. 18), and it is **STRICKEN WITHOUT PREJUDICE**; and

3)  Defendants **SHALL** file an Amended Answer and Counterclaim that (a) reflects the affirmative defense(s) stricken and voluntarily dropped, (b) removes the failure-to-state-a-claim  defense from under the heading "Affirmative Defenses," and (c) includes the words "as Trustee" in the reference to Plaintiff in the "wherefore" clause.


Dated: November 14, 2011                         s/Richard H. Kyle
                                                 RICHARD H. KYLE
                                                 United States District Judge