**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

U.S. BANK NATIONAL ASSOCIATION,    Civ. No. 11-1445 (RHK/JJG)
as Indenture Trustee,

Plaintiff,

v.          **ORDER**

EDUCATION LOANS INCORPORATED AND
STUDENT LOAN FINANCE CORPORATION,

Defendants.

This matter coming to be heard on the Motion (Doc. No. 58) of Plaintiff U.S. Bank National Association, a national banking association (*"U.S. Bank"* or the *"Bank"*) solely in its capacity as Trustee defined below (the *"Trustee"*), for approval of the Settlement Agreement as defined herein and dismissal of the above captioned action with prejudice (the *"Motion"*) and the Joint Motion of the Trustee and Defendants Education Loans Incorporated (*"EdLinc"*) and Student Loan Finance Corporation (*"SLFC"* and with EdLinc and the Trustee, the *"Parties"*) for treatment of the Motion on an expedited basis. The Court having considered the submissions in support of the Motion, having heard arguments of counsel, and being sufficiently advised in the premises, hereby makes the following:

**FINDINGS OF FACTS**

A.    SLFC administers a program for the purchase of student loans from lenders and the origination of student loans, and these student loans include loans guaranteed and

subsidized under the Federal Family Education Loan Program (*"FFELP"*) established pursuant to the Higher Education Act of 1965 and private loans;

B.    EdLinc is the wholly-owned subsidiary of SLFC and the issuer of certain Notes, to be defined below, the proceeds of which were used to acquire student loans;

C.    The student loans purchased by EdLinc and the proceeds therefrom secure the payment of the respective Notes;

D.    EdLinc as issuer of the Notes engaged SLFC to provide services in connection with the origination, acquisition, servicing and collection of the student loans;

E.    U.S. Bank serves as Trustee with respect to a number of Trusts, including EdLinc Student Loan Trust 1998-1 (*"1998-1"*), EdLinc Student Loan Trust 1999-1 (*"1999-1"*), EdLinc Student Loan Trust 2001-1 (*"2001-1"*), EdLinc Student Loan Trust 2002-1 (*"2002-1"*), EdLinc Student Loan Trust 2003-1 (*"2003-1"*), EdLinc Student Loan Trust 2004-1 (*"2004-1"*) and EdLinc Student Loan Trust 2004 CD (*"2004 CD"*) (each, a *"Trust"*, and collectively, the *"Trusts"*), each governed by an applicable indenture issued pursuant to the Trust Indenture Act of 1939 and subject to any supplements or amendments thereto (the *"Indentures"*) whereby EdLinc issued the respective notes (the *"Notes"*);

F.    In 2007, a *qui tam* lawsuit was filed in the United States District Court for the Eastern District of Virginia, Alexandria, Virginia, seeking the return to the federal government of excess student loan subsidies that certain lenders were alleged to have improperly obtained by submitting false and fraudulent claims for federal student loan interest subsidies to the United States Department of Education in connection with the FFELP (the *"Oberg Litigation"*);

G.    The Third Amended Complaint filed by the Plaintiff in the Oberg Litigation alleged EdLinc and SLFC submitted fraudulent claims for special allowance payments allegedly unjustly enriching themselves at the taxpayer expense in relation to Trusts 1998-1 and 1999-1;

H.    EdLinc and SLFC denied the allegations asserted against them in the Oberg Litigation;

I.    EdLinc and SLFC incurred certain legal and related expenses in connection with their defense of the Oberg Litigation, some of which amounts were passed through to Trusts 1998-1 and 1999-1 (*"Oberg Legal Fees"*);

J.    Pursuant to a Consent Judgment between certain parties to the Oberg Litigation, including EdLinc and SLFC, the United States and Jon Oberg agreed to release all claims against EdLinc and SLFC in exchange for the payment of $3 million (the *"Oberg Settlement Payment"*);

K.    A dispute arose between the Trustee and EdLinc and SLFC as to the ability to fund the Oberg Settlement Payment and Oberg Legal Fees from Trusts 1998-1 and 1999-1;

L.    The Trustee further contended that certain defaults existed under the terms of the Indentures with respect to all the Trusts;

M.    The Trustee filed a complaint in the above-captioned matter for declaratory judgment in the United States District Court for the District of Minnesota (the *"District Court"*), Case No. 11-CV-01445 (the *"Minnesota Litigation"*), seeking *inter alia* declaratory relief that the Oberg Settlement Payment and Oberg Legal Fees were not administrative expenses properly payable from the Trusts under the Indentures, with respect to the existence of other defaults under the Indentures with respect to all the

Trusts and instructions and a Court order under Minnesota Statute § 501B.16 as to its rights;

N.    EdLinc and SLFC denied the allegations of the complaint in the Minnesota Litigation and filed a counterclaim for declaratory judgment asserting, among other things, that the Trustee was obliged to pay the Oberg Settlement Payment and Oberg Legal Fees from Trusts 1998-1 and 1999-1;

O.    EdLinc and SLFC have proposed an exchange of the Notes pursuant to Rule 144A of the Securities Act whereby EdLinc would offer to exchange one hundred percent (100%) of the auction rate securities currently outstanding under the Trusts for certain floating rate notes (the *"New Notes"*) to be issued under two (2) new indentures of trust (the *"Exchange"*) and EdLinc would simultaneously invite the 1998-1 fixed rate noteholders to tender those notes for cash (the *"Cash Tender"*);

P.    EdLinc and SLFC have proposed that the existing Trusts would be consolidated into two (2) new discrete trusts (the *"New Trusts"*) to separately finance FFELP and private loans, respectively, and the lien of the Trustee on the assets in each of the existing Trusts, after the payment of the Oberg Settlement Payment, the Oberg Legal Fees, Trustee Fees and Expenses as defined herein and the costs related to the Exchange, the Cash Tender and the issuance of the New Notes, would be released by the Trustee and be allocated to the New Trusts based on the student loan collateral mix of the Trusts and the initial cash deposits required for the New Trusts;

Q.    EdLinc and SLFC have stated that any of the existing holders of the Notes (the *"Noteholders"*), who choose not to participate in the Exchange or the Cash Tender would have their Notes redeemed at par plus accrued interest (the *"Redemption"*);

R.    Accordingly, under the proposed resolution of this matter, the Noteholders will either voluntarily agree to the Exchange or the Cash Tender and be deemed to give the Trustee Direction and Release (defined below) or will have their Notes paid in full so that no further obligations are due and owing to them;

S.    EdLinc and SLFC have represented that, in connection with the Exchange, all fees and expenses of the Trustee provided for under the Indentures, which include, but are not limited to, legal fees and other obligations in connection with Oberg Litigation issues, the Minnesota Litigation and compliance with the terms of the Indentures (*"Trustee Fees and Expenses"*) necessary to defease each Indenture will be paid and that, in addition, the Oberg Settlement Payment and Oberg Legal Fees will be satisfied;

T.    EdLinc and SLFC have confirmed to the Trustee that the amount proposed by the Exchange and Cash Tender to be released from the lien of the Indentures will be sufficient to pay the Oberg Settlement Payment and the Oberg Legal Fees and cause the delivery of a release by Oberg and the United States in a form acceptable to the Trustee with respect to any claims against the applicable Trusts or the Trustee (collectively, *"Exchange Payments and Release"*).

U.    EdLinc and SLFC also have represented that if the Exchange, Cash Tender and Redemption are completed in accordance with the provisions hereof, and the Trustee Fees and Expenses, Oberg Settlement Payment and Oberg Legal Fees are satisfied, the issues raised by the Minnesota Litigation will effectively be settled and resolved; and

V.    The Parties have agreed to the terms of a Settlement Agreement, subject to Court approval, pursuant to which the Parties will dismiss with prejudice the Minnesota Litigation;

W.   The Settlement Agreement has been filed with the Court and is attached hereto as *Exhibit 1* and is incorporated herein.   In addition, EdLinc's Tender and Exchange Offer Statement (*"Exchange Offer"*) and Letter of Transmittal, which are substantially in the form of the documents to be distributed to the Noteholders, have been filed with the Court.[1]   The Exchange Offer includes an instruction and notification to the Noteholders that, in tendering their Notes in the Exchange and the Cash Tender (i) they will be consenting to the settlement of all litigation, including, but not limited to, the Oberg Litigation, Minnesota Litigation, the Counterclaim, the provisions of this Order Approving Settlement and the payment of all related attorneys' fees and will be deemed to have directed the Trustee to take such actions as are necessary to settle the Minnesota Litigation and to make the payments anticipated by the Settlement Agreement, (ii) they will be deemed to have directed the Trustee to take such actions under the related Indentures as are necessary to accomplish the Exchange and the Cash Tender and to release the liens of the Indentures on all assets held as part of the trust estates thereunder (other than moneys set aside for the payment of defeased Notes), including the loan portfolios and any remaining cash, and (iii) they will be releasing the Trustee, its officers, directors, counsel and agents and representatives from any and all claims they may have now, or may have in the future, arising out of, or related to, the existing Notes, including without limitation any claims that the Noteholders are entitled to receive additional principal or interest payments (including any unpaid carry-over amount or interest thereon) with respect to such existing Notes or to participate in any redemption of such existing Notes ((i), (ii) and (iii) above, collectively, the *"Trustee Direction and Release"*);

---

[1]    The Exchange Offer and Letter of Transmittal have been filed under seal pending the commencement of the Exchange.

X.    A stipulation of facts has been submitted in support of the Motion; and

Y.    The Parties, by and through their counsel, have appeared in open court and have requested that the Motion be granted.

### CONCLUSIONS OF LAW

Based on the foregoing, and all the files, records, and proceedings herein, and it appearing that the relief requested in the Motion, including the approval of the Settlement Agreement, provides a reasonable alternative to Noteholders in that they will either agree to the proposed Exchange and Cash Tender or be paid in full and in cash for their Notes, and it appearing that the Trustee has acted reasonably in agreeing to the terms of the Settlement Agreement subject to Court approval, and it appearing that the Court has jurisdiction over this matter, that venue is proper in this District, that adequate notice has been given under the circumstances and no other notice need be given, and the Court having reviewed and considered the Motion, the affidavits, the supporting memorandum and exhibits, and after due deliberation, and sufficient cause appearing therefor, it is **ORDERED** that:

1.    The Motion (Doc. No. 58) is **GRANTED**;

2.    The Settlement Agreement, substantially in the form of *Exhibit 1*, is **APPROVED**;

3.    The execution and implementation of the Settlement Agreement by the Trustee is a reasonable and an appropriate exercise of its powers and duties under the Indentures;

4.    The settlement of the Minnesota Litigation by means of the Exchange, Redemption and Cash Tender and the Exchange Payments and Release which will result in the exchange, purchase or redemption of the Notes,

defeasance of the Indentures, release of the lien of the Indentures and, after payment of certain amounts, transfer of the trust estate by the Trustee, is a reasonable and appropriate exercise of the Trustee's powers and duties under the Indentures;

5.  Upon consummation of the Exchange, Redemption and Cash Tender and the entry of this Order, there is a full release and discharge of the Trustee of its duties and obligations under the Indentures in all respects and all Noteholders shall be deemed (i) to waive any and all claims against U.S. Bank National Association in any capacity whatsoever with respect to the terms of the Settlement Agreement, and (ii) to release and forebear from commencing, instituting and or prosecuting any lawsuit, action or any other proceeding and or making any claim arising out of or in connection with the subject matter of this action against those persons or entities who are signatories to the Settlement Agreement and including against the Trustee of the Trusts;

6.  This action, including without limitation the Complaint, the Counterclaim, and any amendments thereto, is **DISMISSED WITH PREJUDICE** and without costs to any party; and

7.  This matter may be reinstated in the event that any of the conditions precedent to the effectiveness of the Settlement Agreement have not been satisfied.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Date:  June 19, 2012                           s/Richard H. Kyle
                                               RICHARD H. KYLE
                                               United States District Judge

**EXHIBIT 1**


**SETTLEMENT AGREEMENT**

# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

U.S. Bank National Association,
as Indenture Trustee,

COURT FILE NO. 11-CV-01445 (RHK/JJG)

Plaintiff

v.

SETTLEMENT AGREEMENT

Education Loans Incorporated and
Student Loan Finance Corporation,

Defendants.

_____

This Settlement Agreement (hereinafter the *"Agreement"*) dated as of June __,

2012, by and among Education Loans Incorporated (*"EdLinc"*), Student Loan Finance

Corporation (*"SLFC"*) and U.S. Bank National Association, a national banking

association (*"U.S. Bank"* or the *"Bank"*) solely in its capacity as Trustee for the Trusts

defined below (the *"Trustee"* and with EdLinc and SLFC, the *"Parties"*), recites and

provides as follows:

### RECITALS

WHEREAS, SLFC administers a program for the purchase of student loans from

lenders and the origination of student loans, and these student loans include loans

guaranteed and subsidized under the Federal Family Education Loan Program (*"FFELP"*) established pursuant to the Higher Education Act of 1965 and private loans;

WHEREAS, EdLinc is the wholly-owned subsidiary of SLFC and the issuer of certain Notes, to be defined below, the proceeds of which were used to acquire student loans;

WHEREAS, the student loans purchased by EdLinc and the proceeds therefrom secure the payment of the respective Notes;

WHEREAS, EdLinc as issuer of the Notes engaged SLFC to provide services in connection with the origination, acquisition, servicing and collection of the financial student loans;

WHEREAS, U.S. Bank serves as Trustee with respect a number of Trusts, including EdLinc Student Loan Trust 1998-1 (*"1998-1"*), EdLinc Student Loan Trust 1999-1 (*"1999-1"*), EdLinc Student Loan Trust 2001-1 (*"2001-1"*), EdLinc Student Loan Trust 2002-1 (*"2002-1"*), EdLinc Student Loan Trust 2003-1 (*"2003-1"*), EdLinc Student Loan Trust 2004-1 (*"2004-1"*) and EdLinc Student Loan Trust 2004 CD (*"2004 CD"*) (each, a *"Trust"*, and collectively, the *"Trusts"*) each governed by an applicable indenture issued pursuant to the Trust Indenture Act of 1939 and subject to any supplements or amendments thereto (the *"Indentures"*) whereby EdLinc issued the respective notes (the *"Notes"*);

- 2 -

WHEREAS, in 2007, a *qui tam* lawsuit was filed in the United States District Court for the Eastern District of Virginia, Alexandria, Virginia, seeking the return to the federal government of excess student loan subsidies that certain lenders were alleged to have improperly obtained by submitting false and fraudulent claims for federal student loan interest subsidies to the United States Department of Education in connection with the FFELP (the *"Oberg Litigation"*);

WHEREAS, the Third Amended Complaint filed by the Plaintiff in the Oberg Litigation alleged EdLinc and SLFC submitted fraudulent claims for special allowance payments allegedly unjustly enriching themselves at the taxpayer expense in relation to Trusts 1998-1 and 1999-1;

WHEREAS, EdLinc and SLFC denied the allegations asserted against them in the Oberg Litigation;

WHEREAS, EdLinc and SLFC incurred certain legal and related expenses in connection with their defense of the Oberg Litigation, some of which amounts were passed through to Trusts 1998-1 and 1999-1 (*"Oberg Legal Fees"*);

WHEREAS, pursuant to a Consent Judgment between certain parties to the Oberg Litigation, including EdLinc and SLFC, the United States and Jon Oberg agreed to release all claims against EdLinc and SLFC in exchange for the payment of $3 million (the *"Oberg Settlement Payment"*);

WHEREAS, a dispute arose between the Trustee and EdLinc and SLFC as to the ability to fund the Oberg Settlement Payment and Oberg Legal Fees from Trusts 1998-1 and 1999-1;

WHEREAS, the Trustee further contended that certain defaults existed under the terms of the Indentures with respect to all the Trusts;

WHEREAS, the Trustee filed a Complaint for Declaratory Judgment in the United States District Court for the District of Minnesota (the *"District Court"*), Case No. 11-CV-01445 (the *"Minnesota Litigation"*), seeking declaratory relief that the Oberg Settlement Payment and Oberg Legal Fees were not administrative expenses properly payable from the Trusts under the Indentures and with respect to the existence of other defaults under the Indentures;

WHEREAS, EdLinc and SLFC denied the allegations of the Complaint in the Minnesota Litigation and filed a counterclaim asserting among other things that the Trustee was obliged to pay the Oberg Settlement Payment and Oberg Legal Fees from Trusts 1998-1 and 1999-1;

WHEREAS, EdLinc and SLFC have proposed an exchange of the Notes pursuant to Rule 144A of the Securities Act whereby EdLinc would offer to exchange one hundred percent (100%) of the auction rate securities currently outstanding under the Trusts with certain floating rate notes (the *"New Notes"*) to be issued under two (2) new indentures of

trust (the *"Exchange"*) and EdLinc would simultaneously invite the 1998-1 fixed rate noteholders to tender those notes for cash (the *Cash Tender"*);

WHEREAS, EdLinc and SLFC have proposed that the existing Trusts would be consolidated into two (2) new discrete trusts (the *"New Trusts"*) to separately finance FFELP and private loans, respectively, and the lien of the Trustee on the assets in each of the existing Trusts, after the payment of the Oberg Settlement Payment, the Oberg Legal Fees, EdLinc and SLFC's fees and expenses in connection with the Minnesota Litigation, Trustee Fees and Expenses as defined herein and the costs related to the Exchange, the Cash Tender and the issuance of the New Notes, would be released by the Trustee and be allocated to the New Trusts based on the student loan collateral mix of the Trusts and the initial cash deposits required for the New Trusts;

WHEREAS, EdLinc and SLFC have stated that any of the existing Noteholders, defined herein, who choose not to participate in the Exchange or the Cash Tender would have their Notes redeemed at par plus accrued interest (the *"Redemption"*);

WHEREAS, EdLinc and SLFC have represented that, in connection with the Exchange or the Cash Tender, all fees and expenses of the Trustee provided for under the Indentures, which include, but are not limited to, legal fees and other obligations in connection with Oberg Litigation issues, the Minnesota Litigation and compliance with the terms of the Indentures (*"Trustee Fees and Expenses"*) necessary to defease each

Indenture will be paid and that, in addition, the Oberg Settlement Payment and Oberg Legal Fees will be satisfied;

WHEREAS, EdLinc and SLFC have represented that if the Exchange, Cash Tender and Redemption are completed in accordance with the provisions hereof, the issues raised by the Minnesota Litigation will effectively be settled and resolved; and

WHEREAS, the Parties hereto desire to fully and finally settle and resolve any and all claims that have been or could have been asserted among them in the Minnesota Litigation and to avoid the continued burden and expense associated with litigating any such claims;

NOW THEREFORE, in consideration of the mutual covenants and agreements set forth herein and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties hereto, it is hereby agreed that:

1.      Dismissal.  The Trustee agrees to dismiss with prejudice its lawsuit against EdLinc and SLFC in connection with the Trusts and EdLinc and SLFC agree to dismiss with prejudice their Counterclaim against the Trustee upon the entry of an Order Approving Settlement, as defined below.

2.      Conditions Precedent To The Effectiveness Of This Agreement.  As express conditions precedent to the obligation of the Parties to consummate this Agreement:

(a)     SLFC and EdLinc shall have closed on the Exchange and Cash Tender as discussed in the Tender and Exchange Offer Statement, substantially in the form attached hereto as Exhibit One;

(b)     entry of a final order by the District Court providing approval of the terms of this Agreement, including finding that a settlement of the Minnesota Litigation by means of the proposed Exchange, Redemption and Cash Tender and Exchange Payments and Release, as defined below, are reasonable and appropriate, and that it is reasonable and appropriate for the Trustee to enter into this Agreement and to dismiss the Minnesota Litigation subject to the successful completion of the Exchange, Redemption and Cash Tender (the *"Order Approving Settlement"*) from which the Parties covenant and agree not to appeal from or seek any other form of review;

(c)     confirmation by EdLinc and SLFC to the Trustee that the amount proposed by the Exchange and Cash Tender to be released from the lien of the Indentures will be sufficient to pay the Oberg Settlement Payment and the Oberg Legal Fees and delivery of a release by Oberg and the United States in a form acceptable to the Trustee with respect to any claims against the applicable Trusts or the Trustee (collectively, *"Exchange Payments and Release"*);

(d)     (i)     the statement of counsel (who shall be acceptable to the Trustee (which shall include Dorsey & Whitney LLP)) required to be delivered to the Dealer Manager with respect to the absence of misstatements or omissions in the offering

documents submitted to the Noteholders in connection with the Exchange and the Cash Tender shall be addressed and delivered to the Trustee, and (ii) an opinion of counsel, who shall be acceptable to the Trustee (which shall include Dorsey & Whitney LLP), addressed and delivered to the Trustee, in a form acceptable to the Trustee, in which counsel shall opine that (a) the Exchange, the Redemption and the Cash Tender do not violate any provision of the related Indentures or any applicable statute, rule or regulation of the United States (including, without limitation, the Securities and Exchange Commission), and (b) all conditions precedent to the satisfaction and discharge of each of the Indentures have been satisfied;

(e)      a general release of the Bank, in all capacities, its parent, the Trustee, its officers, directors and agents or representatives, including counsel, by EdLinc and SLFC substantially in the form of Exhibit Two hereto;

(f)      Exchange, Redemption and Cash Tender documentation must include a description (in a form acceptable to the Trustee) to the Noteholders that in tendering their Notes in the Exchange and the Cash Tender (i) they will be consenting to the settlement of all litigation, including, but not limited to, the Oberg Litigation and Minnesota Litigation and the provisions of the Order Approving Settlement and the payment of all related attorneys' fees and will be deemed to have directed the Trustee to take such actions as are necessary to settle such claims and make such payments, (ii) they will be deemed to have directed the Trustee to take such actions under the related Indentures as

are necessary to accomplish the Exchange and the Cash Tender and to release the liens of the Indentures on all assets held as part of the trust estates thereunder (other than moneys set aside for the payment of defeased Notes), including the loan portfolios and any remaining cash, and (iii) they will be releasing the Trustee, its officers, directors, counsel and agents and representatives from any and all claims they may have now, or may have in the future, arising out of, or related to, the existing Notes, including without limitation any claims that they are entitled to receive additional principal or interest payments (including any unpaid carry over amount or interest thereon) with respect to such existing Notes or to participate in any redemption of such existing Notes;

(g)     Trustee Fees and Expenses specifically, all fees and expenses of the Trustee and its counsel related to the Trusts, in the amount of $820,000 have been paid on an irrevocable basis;

(h)     legal title of all FFELP loans shall be transferred from U.S. Bank to the new eligible lender trustee on the closing date, and SLFC agrees to cause any required notices to the Department of Education and applicable guarantee agencies to be given within 5 business days after closing; and

(i)     the Trustee shall, only in the event the conditions precedent set forth in Sections 2 and 3 have been satisfied, on the closing date and contemporaneously with all other actions to be taken in connection with the purchase of Notes tendered in the Cash

Tender, the exchange of Notes tendered in the Exchange and the defeasance of the balance of the Notes not tendered:

- execute a satisfaction and release of lien, in form and substance acceptable to the Trustee, with respect to each Indenture, releasing the lien of each such Indenture on the student loans, cash and investments then comprising the trust estate thereunder (other than any cash and investments then held by the Trustee for the defeasance of any Notes not tendered);

- execute such documents, in form and substance acceptable to the Trustee, as are reasonably necessary to transfer, without recourse, all of its right, title and interest in and to all of the student loans and related documents (including all evidences of indebtedness), as well as any moneys received with respect thereto, to the New Trusts and, in the case of the New Trust which will receive the FFELP loans, the eligible lender trustee therefor; and

- transfer all remaining cash and investments in the trust estates under the Indentures as directed in writing by EdLinc (including, without limitation, transfers from one or more Indentures to other Indentures in connection with the purchase or defeasance of Notes under the latter indentures).

3.      <u>Order Approving Settlement</u>.  The Parties agree that the Order Approving Settlement, which shall be in form and substance acceptable to the Trustee, shall, among other things:

(a)      order, adjudge and decree that the Agreement is approved;

(b)      approve the execution of the Agreement by the Trustee as a reasonable and appropriate exercise of its powers and duties under the Indentures;

(c)      find that the settlement of the Minnesota Litigation by means of the Exchange, Redemption and Cash Tender, and the Exchange Payments and Release which will result in the exchange, cash tender payment or redemption of the Notes, defeasance of the Indentures, release of the lien of the Indentures and, after payment of certain amounts, transfer of the trust estate by the Trustee is a reasonable and appropriate exercise of its powers and duties under the Indentures; and

(d)      upon consummation of the Exchange, Redemption and Cash Tender and the entry of the Order Approving Settlement, there is the full release and discharge the Trustee of its duties and obligations under the Indentures in all respects and as to all parties.

The requirements of this paragraph (3) that the Order Approving Settlement contain each of the foregoing provisions may be waived by mutual agreement of the Parties.

4.     <u>Agreement Valid and Binding</u>.  Each of the undersigned Parties represents and warrants that this Agreement and all other documents executed by such Party in accordance with this Agreement are valid and binding obligatons of such Party enforceable in accordance with their terms.   Such Party has taken or will take all necessary corporate action required to authorize the execution, performance and delivery of this Agreement and related documents, and upon the Order Approving Settlement becoming final (which may be waived by mutual agreement of the Parties), and the conditions to this Agreement being satisfied, it will perform this Agreement and the transactions contemplated hereby.

5.     <u>Capacity of the Trustee</u>.  This Agreement is executed by U.S. Bank not individually but solely as Trustee and any claims which may be alleged against U.S. Bank which may result from the signing of this Agreement or any related documents shall be payable only out of the Trust property under the Indentures.  It is expressly understood and agreed by and between the Parties hereto that each and all of the representations, covenants, undertakings and agreements made herein on the part of the Trustee are representations, covenants, undertakings and agreements of the Trustee pursuant to the Indentures and each and every one of them is not made and are not intended as an individual or personal representations, covenants, undertakings and agreements by U.S. Bank for the purposes or with the intention of binding U.S. Bank or any of its officers, employees or agents, individually or personally, but are made and intended for the purpose of binding only the Trust property of the Indentures.  This instrument and any

related documents hereto are executed and delivered by the Trustee not in its own rights but solely in the exercise of the powers conferred upon it as Trustee under the Indentures and no personal responsibility or individual or personal liability is assumed by nor shall at any time be asserted or enforceable against U.S. Bank or any of its officers, directors, employees, agents or their representatives on account of any representations, covenants, undertakings and agreements herein contained.

6.      Binding Effect.  This instrument shall be effective only when the Order Approving Settlement becomes final.  In the event this Agreement is not approved by the District Court, the terms of this Agreement shall not be binding upon any of the Parties hereto and none of the provisions hereof, including the Recitals, shall be used or referred to in any subsequent proceeding or shall prejudice or impair any of the rights or remedies of any of the Parties hereto.

7.      Counterparts.  This Agreement may be executed in counterparts each of which shall be deemed an original and together shall constitute one in the same document.

8.      No Oral Modification.  This Agreement contains the entire agreement of the Parties with respect to the subject matter hereof and may not be modified in any way except by a writing executed by authorized representative of each of the Parties hereto.

9.      Consent to Jurisdiction.  Each of the Parties hereto agrees that all actions, suits or other proceedings arising out of or relating in any way to this Agreement shall be

brought in the United States District Court for the District of Minnesota.  Each of the Parties hereto knowingly, voluntarily, intelligently, absolutely and irrevocably waives and agrees not to assert in any such action, suit or proceeding that it is not subject to the personal jurisdiction of the District Court for the District of Minnesota or that the action, suit or proceedings should be transferred to a different venue under *forum non conveniens* principles or statutes embodying such principles.

10.    <u>Governing Law</u>.   The terms and conditions and provisions of this Agreement shall be governed and construed in accordance with the laws of the State of Minnesota.

11.    <u>No Severability</u>.  The terms and provisions of this Agreement are dependent upon the validity and enforceability of all of the terms and provisions hereof and no term or provision shall be severable from this Agreement.

12.    <u>Representations</u>.   All representations contained in this Agreement or contained in certificates of EdLinc and SLFC or its counsel submitted pursuant to this Agreement and the obligations of EdLinc and SLFC shall survive the consummation of the Exchange, Cash Tender and Redemption.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by their duly authorized officers as of the date first above written.

STUDENT LOAN FINANCE
   CORPORATION

By: _____

Name:
Title:

EDUCATION LOANS INCORPORATED

By: _____

Name:
Title:

U.S. BANK NATIONAL ASSOCIATION,
   as Trustee

By: _____

Name:
Title:

**EXHIBIT 1**

**SUBJECT TO A JOINT MOTION TO FILE UNDER SEAL**

**EXHIBIT 2**

**MUTUAL RELEASE**

## MUTUAL GENERAL RELEASE

**THIS RELEASE**, dated as of June __, 2012 (the *"Release"*) is given by Education Loans Incorporated (*"Edlinc"*) and Student Loan Finance Corporation (*"SLFC"*), collectively the *"Edlinc Parties"*, on the one hand, and U.S. Bank National Association, as Indenture Trustee ("*U.S. Bank*"), on the other hand, all collectively "*the Parties"* and each such party individually a *"Party,"* in consideration of the agreements and undertakings referenced in the Settlement Agreement among the parties in *U.S. Bank National Association v. Education Loans Incorporated and Student Loan Finance Corp.*, District of Minnesota Ct. File No. 11-CV-01445 (RHK/JJG) (the *"Settlement Agreement"*).

1.     *Definitions and Terms*.   Unless specifically defined otherwise herein, all terms used in this Release shall have the meanings ascribed to them in the Settlement Agreement.

2.     *General Release by Edlinc Parties*.   Upon the entry of the Settlement Approval Order and consummation of the Exchange, Redemption and Cash Tender, which is hereby acknowledged by EdLinc to have occurred, with the exception of the Parties' performances under the Settlement Agreement, the Edlinc Parties hereby discharge, acquit, release, remise and give up any and all legal, equitable and other claims, rights, defenses, counterclaims, interests and remedies which they have, had or may have had against U.S. Bank and all parents, subsidiaries, affiliates, predecessors, successors and assigns, officers, directors, members, managers, agents, attorneys and employees of U.S. Bank and U.S. Bank National Association (the *"U.S. Bank Released*

*Parties"*) with respect to or from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, loan commitments, controversies, agreements, promises, variances, trespasses, damages, judgments, extent, executions, claims and demands, costs, expenses and attorneys' fees whatsoever, whether based on any federal or state law or right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown and whether or not accrued and whether or not asserted in any litigation against the U.S. Bank Released Parties whatsoever, in law, admiralty or equity from the beginning of the World to the date of this Release, based upon, arising out of, or relating to the Indentures, the Notes issued thereunder, the Oberg Litigation, the Minnesota Litigation, the Exchange, Redemption and Cash Tender and the Exchange Payments and Release referenced in the Settlement Agreement (collectively referred to as *"EdLinc Claims"*).

3.   *General Release by U.S. Bank.*   Upon the entry of the Settlement Approval Order and consummation of the Exchange, Redemption and Cash Tender, which is hereby acknowledged by EdLinc to have occurred, with the exception of the Parties' performances under the Settlement Agreement, U.S. Bank hereby discharges, acquits, releases, remises and gives up any and all legal, equitable and other claims, rights, defenses, counterclaims, interests and remedies which it has, had or may have had against the Edlinc Parties and all parents, subsidiaries, affiliates, predecessors, successors and assigns, officers, directors, members, managers, agents, attorneys and employees of the EdLinc Parties (the *"EdLinc Released Parties"*) with respect to or from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills,

3

specialties, covenants, contracts, loan commitments, controversies, agreements, promises, variances, trespasses, damages, judgments, extent, executions, claims and demands, costs, expenses and attorneys' fees whatsoever, whether based on any federal or state law or right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown and whether or not accrued and whether or not asserted in any litigation against the Edlinc Released Parties whatsoever, in law, admiralty or equity from the beginning of the World to the date of this Release, based upon, arising out of, or relating to the Indentures, the Notes issued thereunder, the Oberg Litigation, the Minnesota Litigation, the Exchange, Redemption and Cash Tender and the Exchange Payments and Release referenced in the Settlement Agreement (collectively referred to as *"U.S. Bank Claims"* and with the EdLinc Claims, the *"Claims"*).

4.    *Payment.*   Each Party hereby acknowledges, confirms and agrees that it has received valuable consideration for making this Release.  Each Party agrees not to seek anything further from any other Party, including any payment or other consideration from any  Party, except with respect to any obligations of such  Party under the Settlement Agreement.

5.    *Who Is Bound.*   Each Party, each Party's predecessors, successors and assigns, parents, subordinates, affiliates, investors, parties, employees, attorneys and agents are bound by this Release.  In addition, anyone who may succeed to any Party's rights and responsibilities is also bound by this Release.

6.     *Covenant Not To Sue.*   Each Party hereby agrees not to commence, directly or indirectly, any complaint, grievance, lawsuit or action, at law, equity or otherwise based on any Claims released pursuant to this Release and the Settlement Agreement.

7.     *Construction.*   Each Party expressly agrees that this Release shall not be interpreted or construed against or in favor of any  Party by virtue of the identity, interest or affiliation of its preparer.

8.     *Full Knowledge.*   Each Party agrees that it has read, understands and has had an opportunity to consult with its own private counsel regarding this Release, and executes the same as its free and voluntary act.

9.     *Binding Agreement.*   This Release and the obligations, representations and warranties contained herein shall inure to the benefit of the Parties and their respective heirs, successors and assigns.  The Settlement Agreement and this Release are intended to be a complete resolution of any and all Claims between the Parties and can only be amended in a writing signed by all Parties.

10.     *Governing Law.*   This Release shall be governed by and construed in accordance with the laws of the State of Minnesota.

11.     *Signature.*  Each Party represents and warrants that the person executing this Release is duly authorized to do so, and that this Release constitutes a valid and binding obligation of each Party.    Each Party agrees that this Release is equitable, just and reasonable and supported by fair and adequate consideration.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the following signature of Education Loans Incorporated set forth below indicates its intention to be bound by the terms of this Release.

EDUCATION LOANS INCORPORATED

By: _____

Its: _____

IN WITNESS WHEREOF, the following signature of Student Loan Finance Corporation set forth below indicates its intention to be bound by the terms of this Release.

STUDENT LOAN FINANCE
CORPORATION

By: _____

Its: _____

IN WITNESS WHEREOF, the following signature of U.S. Bank National Association, as Indenture Trustee set forth below indicates its intention to be bound by the terms of this Release.

U.S. BANK NATIONAL ASSOCIATION,
    AS INDENTURE TRUSTEE

By: _____

Its: _____